IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARLON ALEXIS LOPEZ PEREZ, | * |
| Plaintiff | * |
| v. | Civ. No.: MJM-23-2198 |
| BLUE COLLAR SCHOLARS, LLC, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM ORDER

Currently pending are defendant/counter-plaintiff Blue Collar Scholars, LLC's ("BCS") Motion for Leave to File First Amended Counterclaim ("Motion to Amend Counterclaim," ECF 42) and related Motion to Modify Amended Scheduling Order and Reopen Deposition of Marlon Alexis Lopez Perez ("Motion to Modify Scheduling Order," ECF 44). Each motion is fully briefed, and no hearing is necessary to resolve them. Loc. R. 105.6 (D. Md. 2023). For reasons explained below, BCS's Motion to Amend Counterclaim is denied. Because the relief requested in the Motion to Modify Scheduling Order is entirely based BCS's proposed amended pleading, that motion shall be denied as well.

### I.  BACKGROUND

Plaintiff/counter-defendant Marlon Alexis Lopez Perez ("Plaintiff") filed this action against BCS and its CEO Samuel Alfredo Forline (collectively, "Defendants") to recover allegedly withheld overtime compensation under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C.

1

§§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code, Labor & Empl. Art. §§ 3-413, 3-415, and 3-427; and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2. ECF 1. Defendants filed an Answer and Counterclaim in which BCS asserted counterclaims against Plaintiff for conversion/theft and unjust enrichment. ECF 20. Plaintiff filed an Answer and Affirmative Defenses to the Counterclaim, ECF 23; a Scheduling Order was entered in accordance with a joint motion filed by the parties, ECF 26; and this matter proceeded to discovery. The Scheduling Order set September 6, 2024, as a deadline for amendment of pleadings and December 9, 2024, as the deadline for completion of discovery. *Id.*

On December 6, 2024, BCS filed a Motion to Amend Counterclaim, ECF 42, and a Motion to Modify Scheduling Order, ECF 44. In the Motion to Amend Counterclaim, BCS seeks to add counterclaims for tortious interference with business relationships and misappropriation of trade secrets, and additional factual allegations in support of these new counterclaims and the counterclaim for unjust enrichment. *See* ECF 42, ECF 42-1, 43. In the proposed First Amended Counterclaim, BCS alleges that Plaintiff solicited BCS's customers and performed work for them through his own business Menendez Landscaping. *See generally* ECF 42-1. In the Motion to Modify Scheduling Order, BCS seeks to extend discovery by 120 days to engage in discovery related to this alleged solicitation, including reopening Plaintiff's deposition. ECF 44, 45. At his deposition, Plaintiff denied soliciting, offering work, or performing work for BCS's customers through Menendez Landscaping. ECF 43-1, Ex. 3.

Plaintiff opposes the Motion to Amend Counterclaim, arguing that it is untimely, the late filing is not supported by good cause, and the newly added counterclaims are prejudicial to Plaintiff and futile. ECF 52. In its response to the Motion to Modify Scheduling Order, Plaintiff states that discovery should be reopened only if BCS's proposed amendments are permitted. ECF 53.

BCS filed a reply in support of each motion. ECF 55, 56.

The Court finds, at the outset, that the late filing of BCS's Motion to Amend Counterclaim is justified by good cause. *See* Fed. R. Civ. P. 16(b)(4). Evidence necessary to plead BCS's new allegations was not discovered until November 14, 2024, when it received documents from Zelle reflecting payments by customers of BCS to Yessenia Menendez, Plaintiff's partner in Menendez Landscaping. ECF 43 at 5. Ms. Menendez had testified at her deposition on November 7, 2024, that she received payments from Plaintiff's customers through Zelle. ECF 43-1, Ex. 4. BCS filed its Motion to Amend Counterclaim approximately three weeks after receiving the Zelle documents. The Court finds BCS to have been adequately diligent in seeking to amend its pleading after analyzing the records received from Zelle.

The remaining issue is whether BCS's proposed amendment should be permitted pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## II.   DISCUSSION

Rule 15 states that "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a [Rule 12] motion, whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, the U.S. Court of Appeals Fourth Circuit has endorsed a liberal approach to granting motions for leave to amend. The court has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on

the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal citations omitted).

Here, Plaintiff argues that permitting BCS's proposed amendments would cause prejudice and that the proposed amendments are futile.[1]

### A. Prejudice

Plaintiff argues first that it would be prejudiced by BCS's proposed amendments because discovery has closed. Courts consider the character and timing of the amendment to determine whether an amendment would be prejudicial to the opposing party. *Laber*, 438 F.3d at 427. A prejudicial amendment "is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered . . . [and] is offered shortly before or during trial.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment that instead "adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred" would not be deemed prejudicial. *Id.* (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). In instant case falls between these two poles. BCS, for its part, argues that any prejudice to Plaintiff would be avoided by reopening discovery for 120 days, as proposed in BCS's Motion to Modify Scheduling Order.

The Court need not reach the question of whether BCS's proposed amendments are forbidden as prejudicial under Rule 15 because the Court finds the newly proposed counterclaims to be futile.

---

[1] Plaintiff does not specifically argue that BCS's proposed amendment is made in "bad faith," but he does suggest that the new proposed counterclaims are brought solely in retaliation for Plaintiff's prosecution of this suit. ECF 52 at 1, 3. He further states that, if the proposed counterclaims are permitted, he will pursue a retaliation claim under the FLSA. *Id.* at 1. The Court declines to consider these statements in ruling upon BCS's motions because Plaintiff offers no evidence or argument to suggest that the proposed counterclaims are retaliatory.

### B. Futility

Leave to amend should be denied as futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citing *Davis*, 615 F.2d at 613). A proposed amendment may be denied when it does not adequately state a claim for relief and would be subject to dismissal under Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Here, the Court finds BCS's proposed counterclaims for misappropriation of trade secrets and tortious interference with business relationships to be futile because it is clear that BCS fails to state plausible claims for relief.

#### 1. Misappropriation of Trade Secrets

The federal Defend Trade Secrets Act ("DTSA") provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "[T]o prevail on a misappropriation claim under the DTSA, the plaintiff must allege: (1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce." *Philips N. Am. LLC v. Hayes*, Civ. No. ELH-20-1409, 2020 WL 5407796, at *7 (D. Md. Sept. 9, 2020) (citing 18 U.S.C. § 1836(b)(1)). The DTSA's definition of "trade secret," as relevant here, includes "all forms and types of . . . business . . . information," provided its owner "has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C.A. § 1839(3).

5

The DTSA "provides that a trade secret can be misappropriated when a person either (1) acquires a trade secret while knowing, or having reason to know, that the trade secret was acquired by improper means, 18 U.S.C. § 1839(5)(A), or (2) uses or discloses the trade secret after acquiring it through improper means, *id.* § 1839(5)(B)(i)." *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 132 (D. Md. 2020). The statutory definition of "misappropriation" also includes

> disclosure or use of a trade secret of another without express or implied consent by a person who . . .
>
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
>
>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>
>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>
>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (iii) before a material change of the position of the person, knew or had reason to know that--
>
>> (I) the trade secret was a trade secret; and
>>
>> (II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5)(B)(ii), (iii). The statute defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" *Id.* § 1839(6)(A).

BCS's proposed amendment claims its "customer list, pricing, and customer buying preferences" are trade secrets and that it "implemented reasonable measures to protect the secrecy of these trade secrets." ECF 42-1, ¶¶ 26, 28. But BCS fails to identify or describe what reasonable

6

measures it took to keep the information secret. BCS states that it shared this information with Plaintiff "so that he could supervise Blue Collar projects and complete the work[,]" claiming its relationship with Plaintiff to have been "a confidential relationship[.]" *Id.* ¶ 11. But BCS offers no facts to support the confidential character of this relationship or facts to show that Plaintiff—or any other BCS employee or contractor—was forbidden from using or sharing this information outside of his work with BCS.

Furthermore, BCS fails to allege sufficient facts to suggest that Plaintiff acquired the information at issue by improper means, or that he either knew or had reason to know that he acquired the information "under circumstances giving rise to a duty to maintain the secrecy" of the information or limit its use. 18 U.S.C. § 1839(5). BCS argues that Plaintiff obtained the information "by misrepresenting his personal business activities while continuing to access" the information. ECF 56 at 11. The only misrepresentation alleged in BCS's proposed amendment is that Plaintiff discussed his business activities with BCS but did not "disclose that he was soliciting Blue Collar customers with the very information Blue Collar provided him." ECF 42-1, ¶ 9. BCS does not allege any facts to support the inference that Plaintiff was under any duty to report his business activities to BCS or that he lied to BCS to obtain its customer list and other information.

BCS cites *Philips North America*, ECF 56 at 11, but that case is readily distinguishable because employees of the plaintiff company in that case were bound by an agreement that "prohibit[ed] [them] from disclosing confidential information and require[d] them to return all company materials upon termination of employment." 2020 WL 5407796, at *9. Here, BCS does not allege that it had any such agreement with Plaintiff with respect to protecting the confidentiality about BCS's customers and pricing.

Therefore, BCS's proposed counterclaim for trade secret misappropriation under the DTSA is futile.

### 2. Tortious Interference with Business Relationships

Under Maryland law, a tortious interference claim may be established by "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 268–69 (Md. 1994) (internal quotation marks and citation omitted). The claim requires "conduct that is independently wrongful or unlawful, quite apart from its effect on the [claimant's] business relationships." *Id.* at 271. "Wrongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (internal quotation marks and citation omitted). The claimant must also "identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (quoting *Baron Fin. Corp. v. Natanzon,* 471 F. Supp. 2d 535, 546 (D. Md. 2006)).

BCS's proposed tortious interference counterclaim is founded upon Plaintiff's alleged solicitation of BCS's customers "by using Blue Collar's confidential pricing, customer lists and contact information, and customer preferences to undercut Blue Collar, by performing the same work without a license and insurance, and upon information and belief by maligning the company and its work to customers." ECF 42-1, ¶¶ 17, 18.

Assuming without deciding that BCS's allegations are not "clearly insufficient" to state a claim for relief under Maryland law, *Johnson*, 785 F.2d at 510, the Court finds that it lacks subject-matter jurisdiction of this proposed counterclaim. The proposed tortious interference counterclaim does not present a federal question, and the requirements of diversity jurisdiction are not met, so "28 U.S.C. § 1367(a) provides the only possible basis for jurisdiction." *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 451 (D. Md. 2014). Section 1367(a) provides federal district courts with supplemental jurisdiction "over 'claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* (quoting 28 U.S.C. § 1367(a)). Compulsory counterclaims are within the district court's supplemental jurisdiction, while permissive counterclaims "must have its own independent jurisdictional base." *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) (citation omitted). "A compulsory counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" *Long*, 28 F. Supp. 3d at 452 (quoting Fed. R. Civ. P. 13(a)).

> The Fourth Circuit has identified
>
>> four inquiries to determine if a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Painter*, 863 F.2d at 331 (citing *Sue & Sam Mfg. Co. v. B–L–S Const. Co.,* 538 F.2d 1048, 1051–53 (4th Cir. 1976). These inquiries are only "a guideline." *Id.* "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Id.* (citation omitted).

The instant case is similar to *Carroll v. Dan Rainville & Assocs. Inc.*, Civ. No. SAG-17-849, 2017 WL 4777706, at *2–4 (D. Md. Oct. 23, 2017), in which the plaintiff brought an action to recover unpaid overtime compensation and sales commissions under the FLSA and MWHL. The defendant employer asserted several counterclaims under state law, including breach of contract, violation of the Maryland Trade Secrets Act, and intentional interference with business relations. *Carroll*, 2017 WL 4777706, at *1. Guided by the four inquiries outlined in *Painter* and *Sue & Sam*, Judge Gallagher found that the Court lacked subject-matter jurisdiction over these state-law counterclaims. This Court is persuaded by Judge Gallagher's reasoning and finds it to be fully applicable here. First, the issues of fact and law raised by Plaintiff's claims for unpaid overtime compensation and those raised by BCS's proposed tortious interference counterclaim are not "largely the same." *Painter*, 863 F.2d at 331. "[T]he only connection [between the parties' claims] is the employee-employer relationship." *Id.* at *3 (citing *Williams v. Long*, 558 F. Supp. 2d 601, 604 (D. Md. 2008)). And the legal issues raised by Plaintiff's FLSA, MWHL, and MWPCL claims focus on work Plaintiff performed for Defendants and compensation they paid him. These issues are "clearly distinct" from those raised by BCS's claim for tortious interference with business relationships between BCS and its customers. *Id.* (quoting *Williams*, 558 F. Supp. 2d at 604).

Second, res judicata will not bar BCS from bringing a subsequent suit on its tortious interference claim, and BCS does not contend that it would.

"Third, 'substantially the same evidence' will not support or refute the claims and counterclaims in the instant case." *Carroll*, 2017 WL 4777706, at *3. Plaintiff's claims will rely upon evidence of an employment relationship between him and Defendants, the number of hours he worked for Defendants, and the amounts they paid him. BCS's counterclaim would rely upon

10

evidence of separate work Plaintiff offered to, and performed for, BCS's customers outside of any employment relationship with BCS and any independently wrongful conduct Plaintiff undertook interfere in BCS's relations with these customers.

Fourth, this Court does not perceive any logical relationship between Plaintiff's claims and BCS's proposed counterclaim sufficient to confer jurisdiction. As Judge Motz pointed out in *Williams*, "numerous federal courts have refused to exercise supplemental jurisdiction over counterclaims to a FLSA claim that depend on the 'employer-employee relationship' to 'single-handedly create[ ] a common nucleus of operative fact. . . .'" 558 F. Supp. 2d at 606 (citing *Wilhelm v. TLC Lawn Care, Inc.*, Civ. No. 07-2465-KHV, 2008 WL 640733, at *3 (D. Kan. Mar. 6, 2008)); *see also Carroll*, 2017 WL 4777706, at *3.

Thus, this Court finds that it lacks subject-matter jurisdiction of any counterclaim BCS has against Plaintiff for tortious interference with business relationships. The proposed counterclaim is futile.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that BCS's Motion to Amend Counterclaim (ECF 42) and related Motion to Modify Scheduling Order (ECF 44) are DENIED.

It is so ORDERED this  10th  day of February, 2025.

                                              /S/
                                  Matthew J. Maddox
                                  United States District Judge